Brenton Verplug is here for the appellant, Cordero, and Stephen Harris is here for Appelee, Transamerica. And Mr. Verplug, you may begin. May it please the court, Brenton Verplug and Ben Hassebrock here for Mr. Cordero. Mr. Cordero is a lead kid in the industry parlance, a childhood lead poisoning victim entitled to a settlement that was going to pay him decades of benefits once he was 18, tax-free, immune from creditors, and immune from selling it by a no-power assignment clause that he had in his settlement agreement. But yet he's here today as a victim once again under an absolutely unique statutory scheme created by Congress and the Florida legislature, which in turn prevented him from having any authority whatsoever to sell any of these proceeds unless it was sanctioned by a qualified order from the Florida courts under the Structured Settlement Protection Act. Counsel, here is my concern with your... First, let me just say this is an awful case. I mean, it's just horrendous. However, I've got two sort of related questions. The first one is I don't see any evidence in the record that Transamerica and its successor and or its successor, I guess, although all this happened during Transamerica, had reason to know or knew of your client's cognitive condition. And without that, it seems like your claim fails under FAPSA and also otherwise fails because there's no fiduciary duty. So I have two questions. One is why is that not the case? And the other is just sort of a question out of curiosity. Is there a reason why the factoring company, which must have known of your client's condition, or at least I'm assuming it did, and we have some weird business here going on where that's happening, the filings with the court are happening in Broward County and in Sumter County, and your client is in Miami-Dade County. Is there some reason why the factoring company isn't the defendant here? Let me take these in order of the FAPSA claim first. FAPSA, of course, has a new or should have known requirement. In this particular case, some of the factoring companies knew about the circumstances of the lead poisoning, but our position is pretty plain under FAPSA. The most minimal effort on the part of a multibillion-dollar corporation, which is well-equipped to investigate the facts and circumstances— But what is their duty to do so? The duty comes under the Structured Settlement Protection Act. Where does that show up? What language from that act are you relying on? There are numerous requirements under the SSPA, so let me just mention three. One is that the transfer does not contravene any state law. Number two is that it's in the best interest of the payee, the victim. And number three is that independently, it's fair and reasonable to the payee. But here's the problem, right? I agree with you that if there were evidence that Transamerica knew at the time that your client had cognitive disabilities, that there would be triggered Transamerica's obligation under the act. What I'm having trouble with is what the evidence in the record is that they knew or should have known. So if you could maybe focus on that part, that would be helpful to me. Let's take those last two things first. All they had to do to realize that this did not comply with the SSPA was to look at the conditions which are contained on the face of the records that they were looking at. And we'll come back in a second to their knowledge of the lead poisoning. One of them is that it's in the best interest of the payee. They could take a look at these allegations. They could see that they were duplicative. They could see that they were created by the factoring company people. They knew about widespread fraud in the industry. They'd been involved in it for decades. They'd been making a profit from it for decades. So they were self-dealing from our standpoint. And all you had to do was take a look at the circumstances on the face of the petitions showing that over the course of a two-year period, he sold all of his benefits for less than 30%. That's apparent on the face of the material that they were looking at. Yes, but it said things like he needed it for college. He needed it for his educational expenses. And six different times, a court approved it, signed off on it. And again, there's no fiduciary obligation here, unless I'm missing something. Maybe you think there's a fiduciary obligation. But if there is, I need you to tell me where we find that. Well, there's a couple levels to this. First of all, under FAFSA, this is a duty of new or should have known. An insurance company of this size and this financial capacity should not be allowed to consciously and purposefully take the position that they didn't know anything by absolving themselves of any opportunity to investigate. They didn't take any position at all. They just didn't object to the transfers. If you look at New York law and New Hampshire law, they don't have any obligation to object. If we follow that precedent though, right? If you follow the precedent that the district court adopted, but this is a matter of . . . I mean, that's persuasive authority. We're not bound by it, but is there any other authority out there that says that they're obligated to object to a transfer? There actually is plenty of that, Your Honor. First, this is a case of first impression in this sense. No appellate decision in the state of New York has relied on the anti-assignment provisions in the context of the Structured Settlement Protection Acts. The cases that have resolved that, that the district court did not look at, were intermediate level decisions and this court below simply made a bad, eerie guess. The court relied on Supreme Court authority out of New York and Supreme Court of New Hampshire interpreting New York law. They did look at New Hampshire law, New Hampshire court interpreting New York law. They looked at New York law. The New Hampshire court looked at New York law, right? And the district court cited Jennifer Realty, which from our standpoint is exactly the authority they should have followed and it supports completely the position that we are taking in this case. Aren't those cases before New York passed its own Structured Settlement Act? I mean, that's the problem, right? Well, that's exactly what I'm saying. No New York court, this court has to make a decision on that eerie guess. They have to decide whether there was any benefit construed on behalf of Mr. Cordero in that original transaction because the district court found that it wasn't. I guess this is just an unlimited exercise of discretion. They don't have to know that the allegations in the petition are false, that they're apparent on the face of it, and in fact, what does the agreement say when it was signed in the first place? Payee's rights to periodic payments. That's in the No Power Assignment Clause. At the very least, that is an implication of possible benefit for the payee and yet the district court found that this was absolutely without any limitations on the discretion of the insurance company and in this case, on the face of the petitions, the insurance company knew that these were in violation of different portions of . . . Isn't the Anti-Assignment Clause for Transamerica's benefit and not Cordero's benefit? Why would the Anti-Assignment Clause be for Cordero's benefit? Well, as I just said, the implication here under the Payee's rights to periodic payments indicates that there was a benefit for Mr. Cordero. Under New York law, strictly a four-corner state, you cannot waive a contractual entitlement that you have if it takes away the fruits of the benefit of the contract for the other party and the district court found that there were no benefits for Mr. Cordero  They don't have anything to do with structured settlement agreements. That's exactly the point. There is no New York case ever decided and this court has to make that year, I guess. What do we do with Sillman versus the 20th Century Fox? The court said, the Supreme Court of New York, I think they call it the New York Court of Appeals, a prohibition against assignment may be waived and then the New Hampshire Supreme Court applying New York law to a structured settlement agreement held that the insurance company can waive an Anti-Assignment Clause in Singer versus Weiner. And plainly in those citations left out the provision of Section 322 of the Restatement of Contracts, which has another evidence being apparent and here is the clearest and most overwhelming evidence that there was a violation that takes place. This is from the brief that the same insurance company filed in the Green case representing these as cases, as evidence to the Fifth District Court of Appeal. Number one, that the court had no authority to grant this structured or the agreement, well, I'll get this straight, had no authority to grant the qualified order when the No Power Assignment Clause existed. And in fact, according to the brief filed by this insurance company in the Fifth District Court of Appeal, an order approving such transfer is void ab initio. This is the insurance company telling this to a District Court of Appeal and it is exactly completely different than the representations that they were making to the District Court. You didn't answer the question of why the factoring company is not a party to the suit. The factoring company is a party to the suit and in fact, it is a factory, it's not something that I would able to do without water. The factory company is a part of the suit because they were third-partied in by the insurance company. They have protected themselves completely from any obligations they may have to Mr. Cordero by bringing a third-party action for indemnity as the statute requires and as they are allowed to do and as they did do against the factoring company. The factoring companies are bad guys. These people knew it. Why isn't your cause of action against the factoring company then? The factoring companies in most cases have no money left at all. They changed the, as this insurance company knows, they changed the identity with changing the names every few years. The money is sold down the road. It is put into different agreements. Your answer is they may be the perpetrator of the exploitation of Mr. Cordero but they just don't have the money. No, that's not the answer. The answer is that this insurance company— They can't pay a judgment. That is really up to Transamerica to decide when they bring the third-party action but in this particular case, we're not interested in what they did wrong. We're interested in who the gatekeepers were in preventing these ineligible transactions from taking place in the first place when they knew from industry standard, from looking at the agreements themselves, that there was absolutely no support for the qualified orders that they stood by and approved through counsel and, by the way, took $4,500 of profits from it as they went on. Thank you. You've reserved some time. Thank you. We're about Mr. Verplug who will hear from Mr. Harris. May it please the court, Stephen Harris for Wilton Reed Annuity Service Corporation and Transamerica Life Insurance Company. You brought up the SSPA and I think the SSPA, as Mr. Verplug states, controls this case and the opening brief of Cordero at page 10 says, the structured settlement industry, including both the life insurance company, annuity issuers, and the factoring companies, responded with a massive lobbying campaign which resulted in federal legislation and a model SSPA. The legislative history of 5891 includes the version of the model SSPA on which NASDA and NASP, which were the factoring company organization and the structured settlement industry corporation, agreed in September 2000. And the version of that model included the construction provision, which is now part of the SSPAs in most states, which says that compliance with the requirements set forth in Section 3 of the Act, which is the disclosure requirements, and fulfillment of the conditions set forth in Section 4 of the Act, which is the requirement that the order be effective in order to transfer the structured settlement rights and that it be approved in advance by a court order, including best interests and non-contravention filings. That shall solely be the responsibility of the transferee in any transfer, the transferee being the factoring company. Let me just ask you this now. Transamerica knows that these factoring companies engage in deceptive and false representations to these people who, you know, enter into these settlement agreements and get these annuities. They know that. And so, and they didn't object. Maybe they didn't have to object. And, you know, the court in Sumter and Broward County approves, but just aren't they obligated by good faith and fair dealing to object? I mean, they know, Transamerica knows that these factoring companies are taking advantage of people like Mr. Cordero, and then they just don't object. Don't they have some obligation to speak up? Your Honor, I think the factoring companies, first of all, there are thousands of these petitions that are filed throughout the country, and Transamerica deals with hundreds of these on, you know, in any given time period. And while Transamerica may know that factoring companies are bad actors in many cases, they don't know in any particular case whether or not the statements made in the petition are true or false. So what you're asking is that the fact that the Transamerica review every petition and then make a decision, and in fact they do review petitions and they do object from time to time, but they didn't object here. Counsel, let me ask you this. I mean, would you agree that the obligation of your company is, that the obligation kicks in if either your company knew or should have known of Mr. Cordero's condition? I think if they knew that he had a cognitive condition, and I think this would happen in 99% of the cases, I think the annuity issuer or owner would then let the judge know that we have information that there's a cognitive problem with the payee. Right, but I guess my question is more basic than that, and that is, would you agree that under the statute, that if your client either knew or should have known of Mr. Cordero's disability, then it had an obligation to oppose the transfer? No, they didn't have an obligation because there's nothing in the SSP. Even if it knew or should have known? Yeah, there is no obligation because the statute says that they may object. It's something that could be put in front of them. How does that then protect? I mean, isn't the whole purpose of the act to protect adults who can't protect themselves? It is, and that's why.  How does that, if there's no obligation that's triggered as a result of knowledge that the individual can't protect himself, how does the statute accomplish its function? Well, the statute is basically geared to having the judge make a decision as to whether this is in the best interest of the payee and whether it's a reasonable case. So in your view, the statute imposes zero obligations whatsoever on anyone other than the court? Well, there's also an obligation on the factoring company to basically be honest and give petitions to the court that are truthful. Let's just assume for purposes of this question, this is the hypothetical, that the statute requires your client to either have known or should have known of Mr. Cordero's cognitive disability, and that if your client knew or should have known, then your client was required to object. Just assume that for purposes of this question. So then my question to you is, there's obviously a difference between knew and should have known, because clearly what the legislature would be trying to do in that case would be to short-circuit any attempts by any entity to say, well, we didn't know. There's no evidence that we actually knew. And so that's why we have the should have known requirement. So my question for you is, what would trigger, in your view, what would be the rule that we would find that triggers the should have known requirement? What is the quantum of evidence or the type of evidence? So you're asking me to assume that the statute says that if the annuity issuer or owner knew or should have known that there was a cognitive defect, then I have to object. So we would have to object. So what I'm asking you is, is it a situation where you should have known? Was this situation? Yes. No. And why not? And more than that, I'm really asking you, what is the rule, right? Because we have to apply a rule. We don't want to do a, and to quote the last argument, we don't want to have a situation where our rule is, we know it when we see it. We want to be able to describe some type of a rule so that there can be some reliance on the part of the parties that are involved in this kind of situation. So what is the rule? What is the difference between new and should have known? Well, there is nothing in the record to indicate that the annuity issuer or owner should have known. The only way they could have known was to somehow talk to Cordero, and even if they talked to Cordero, he brought this complaint. He brought it in his own name. Did the settlement agreement indicate that the reason for the settlement was because of the lead paint situation and the cognitive dysfunction that occurred as a result of it? No. There's nothing in the settlement agreement, nothing in the qualified assignment, nothing in the annuity. So there's nothing to tell Transamerica that there's something here that they need to, you know, that they need to object. And even . . . What happens in the court proceeding? So we go into court in Broward and Sumter County. The court's got to approve this transfer agreement. And so Transamerica, how does this work now? Transamerica is notified, right? We get copies of the petition. You get a copy of it. And so in these cases, I know there were just six of them, does Transamerica show up in court or they just don't show up because your argument is they don't have to? Right. At the time that these transfers occurred, the payee didn't have to show up. So did the payee show up here? No. Mr. Cordero didn't show up. Who showed up in court? It was just the factoring company attorney. Just the factoring company appeared in court? I believe that's correct. And Mr. Cordero waived his right to appear. He could have appeared, but he waived his right to appear. Okay. And so we're trying to determine whether or not there's any liability on the part of Transamerica. Transamerica is notified in each case, right? Yes. Okay. And they just didn't do anything because your argument is they don't have to? Right. Correct. Okay. And yeah. So they didn't have to and they didn't show up. And the question here becomes if you had – first of all, they're not parties to the settlement agreement. They're only a party to the qualified assignment, Transamerica annuity. And so your argument is they don't have to show up. They can waive the anti-assignment clause because the anti-assignment clause is not for his benefit. It's for your benefit. And the highest court in the state of New York says it can be waived. And then the Supreme Court of New Hampshire applying New York law says, yep, they can waive it. They can waive an anti-assignment clause, period. Correct. Is that your argument? Yes. Okay. And the reason that it's for our benefit is that it was originally put in as the second amendment complaint states it was originally put in there so that the payee does not receive constructive receipt of the proceeds and cannot use the proceeds as a bank account. And so basically the annuity is an agreement between the defendant in the case and Transamerica annuity service and the issuer, which is Transamerica Life. So Mr. Cordero is just basically a third-party beneficiary of the qualified assignment. And the qualified assignment has anti-assignment language, but it doesn't have the no power anti-assignment language. So the annuity issuer has no contact with Mr. Cordero and the annuity owner has no contact with Mr. Cordero. Your argument is who are we interpreting New York law to disagree with the New York court? Well, I think it's basically universal in the country. I mean, there are other cases that have been cited in the brief. So there are other cases that hold the same way, that the annuity issuer and owner have the right to object, but they can also waive the right to object. And I think apart from the anti-assignment language, that's really kind of the crucial language because the Taylor case, which is fairly recently decided, found that there's no provision in the settlement agreement that requires New York Life, in that case, to oppose or investigate the attempted transfers by Terrence Taylor, who's another person who may have cognitive disabilities but did not have anything that was going to show in terms of his defects. So, I mean, Taylor case basically says that the anti-assignment provision is typically for the benefit of LaGuard. And the fact that the SSPA says that there's no liability for the annuity issuer and owner and that it's basically the factoring company which has all the liability in connection with the transfer is basically dispositive. Well, let me ask you this. The contract requires Transamerica to pay him a periodic payment, and then it goes on to say those periodic payments cannot be accelerated, deferred, increased, or decreased. They can't be encumbered. You know, the plaintiff has, you know, nor shall the plaintiff have the power to sell, mortgage, encumber, anticipate the same. I mean, the contract seems clear to me that they're obligated to pay him and there's nothing he can do about it except accept the payment. And the power language only appears in the settlement agreement. It doesn't appear in the qualified assignment. So the qualified assignment just says, you know, the payments cannot be assigned. The settlement agreement has stronger language, but we're not parties to the settlement agreement. I think that's all I have. Thank you, Mr. Harris. Mr. Burplow, you've reserved some time for rebuttal. Thank you, Your Honor. This time I think I'll have to waste them to put the water on the table. Whether there's going to be evidence to demonstrate that this insurance company should have known of the cognitive impairment is, of course, a question of fact. And we're here on the granting of a motion to dismiss. But don't you have to allege enough averments to suggest that there was, that they should have known, Mr. Burplow? Absolutely. And as far as we can see and as best we could graft it, the Second Amendment complaint does exactly that. It demonstrates their knowledge of the fraud in the industry. And under no circumstances should an insurance company of this size and administrative complexity and wealth be able to take a position that they're not intentionally going to find out anything, though a phone call to the factoring company could have done it, a phone call to Mr. Cordero could have done it. But counsel, I mean, it seems like you're basing your position on their knowledge that the factoring industry has a lot of bad actors. Is there anything more than that that you're basing it on? Certainly. And in fact, in these six cases, the petitions themselves allege things which Transamerica knew for a fact, sometimes under a should have known and sometimes on an actually known circumstance were false. What are the specific allegations that you're relying on here to show that you alleged enough to show that they should have known? Well, first of all, the two falsities were that this was in the best interest of the payee and that something less than 30% was fair and reasonable. On the face of it, that's just plainly wrong. It's not necessarily wrong in every single case. I mean, I agree with you that this is the factoring company taking awful advantage. But you could imagine a scenario, I would think, where there was some kind of a real and true emergency that the money was needed and that that was the best rate that the person was able to get, even if they did not suffer from some kind of cognitive dysfunction. So, I mean, how is that enough in and of itself? Well, in those circumstances, then I guess Transamerica could easily have said to the court, this is the exceptional circumstance in which that applies. I want to go back to the focus of your real question, which is what is the proof that would be evident that the insurance company could and should have secured this information? Because it's a need, it's a known or should have known standard. And look at this case as a perfect example. The insurance company has charged for each one of these premiums $750. They can charge whatever they want. You can be sure that the factoring companies would have paid anything that they wanted in order to make these kind of profits. So if they have to do something like pick up the phone and call Mr. Cordero, if they have to do something like pick up the phone and call the factoring companies and say something as simple as, by the way, what was the nature of this underlying problem? Because they know lead kids are all over the system. They don't ask that question. And from the allegations of the Second Amendment complaint, the reason they don't ask that question is so they can stand in front of the district court and a court in the 11th Circuit and say, how were we possibly to know? The fact of their sophistication, the fact of their knowledge of the industry, the fact that there are lead kids all over the system, all of which appears in the Second Amendment complaint. Tell me again what you think obligates them to undertake an affirmative investigation. I know you're relying on part of the statute, so what's the specific part? The fact that they cannot, the specific part of the statute? That obligates them to undertake an affirmative investigation. I'm saying that the insurance company cannot feasibly and ethically take a position that facts which they know to be false can be signed off on by them. And they know it to be false, as you know, from the brief they filed in the... They just didn't show up in court. They didn't show up in court and say, we have no objection. They just didn't, they didn't take a, they just didn't. You're right, it's worse than that. They certified by the signature of counsel that they were just going to take a pass on the whole thing. They didn't even show up. Even at a telephone hearing. Well, it would be worse if they said, they showed up and said, we don't have any objection. I can't see how that would be any worse. They took the easiest way out and spared themselves even more profit from the 750 bucks. I mean, essentially, it's America's joinder in this attack on the whole purpose of the SSPA should prevent them from taking the road out that says the court approved it. So what are we possibly to do? There was a lot they could have done. Okay. I think we have your argument, counsel. Thank you, Your Honor. Court will be in recess until...